**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 2:15-cr-0333-RFB |
| Plaintiff, | **ORDER** |
| v. | |
| COREY LONG | |
| Defendant. | |

### I. INTRODUCTION

Defendant Corey Long filed a Motion to Suppress on January 12, 2017. (ECF No. 31) Mr. Long seeks to suppress a handgun found on him when he was detained by the Las Vegas Metropolitan Police on April 4, 2015. The Court held an evidentiary hearing on the motion on February 28, 2017. On June 2, 2017, the Court issued a minute order granting the Motion to Suppress and indicating that it would issue a written order. (ECF No. 68) This written order follows granting the Motion to Suppress.

### II. FACTUAL FINDINGS

The Court held an evidentiary hearing on February 28, 2017. Based on the testimony and other evidence received at the hearing the Court makes the following findings of fact.

On April 4, 2015 around 1:00 a.m., Corey Long and an associate Mr. Hill were inside of the public casino area of the Cosmopolitan Hotel in Las Vegas, Nevada. At this same time, inside of the private security area of the hotel Officer Yannis of the Las Vegas Metropolitan Police Department ("Metro") and Lieutenant Delzer of Metro had just started a shift at the Cosmopolitan as special event officers for Metro

1

assigned to the Cosmopolitan. They were both in uniform. They did not arrive together but were both in the private security area of the hotel.

Shortly, after Yannis started his shift, he was approached by a hotel security officer. Yannis did not know this officer and had not previously worked with him. The Court does not find that Yannis or Delzer were aware of the training that security officers at the Cosmopolitan receive. Yannis had seen this particular security officer at the hotel previously. This officer asked Yannis to follow him quickly into the public casino area. The officer told Yannis that there had been some type of car accident in the hotel parking garage. Yannis and the security officer ran out of the private security area and into the public casino area. Delzer, having seen Yannis and the security officer run towards the casino, decided to go to the casino to provide support for Yannis and the security officer.

Upon arriving in the casino area, the security officer identified two young men to Yannis—Long, and Hill. The security officer asked Yannis to detain these individuals. He told Yannis that they were seen near a car accident in the garage. Yannis then detained Long by grabbing his arm and putting his hand on his shoulder. Long was not free to leave at that time. Yannis told the two young men he was going to detain them. He then proceeded to forcefully direct both young men with his hands toward and then up against a wall. At this time. Lieutenant Delzer arrived at the scene. This was moments after Yannis had pushed the two young men toward the wall. Delzer then grabbed Long by his arms and pulled Long's arms behind Long's back. Yannis had by this time already handcuffed Hill and placed him against the wall. Delzer then handcuffed Long at the direction of Yannis. Yannis handed handcuffs to Delzer who placed them on Long's wrists. Long was then placed against the wall with his arms handcuffed behind him. At this same time, Hill was also in handcuffs and against the wall. Yannis then led Hill to the security area. For about a minute or so, Long was against the wall handcuffed and being physically restrained by Delzer after Hill had already been taken away from this area. There were two hotel security personnel and one other Metro officer present while Long was against the wall after Hill had been taken away. After about a

minute against the wall, Delzer began to physically direct the handcuffed Long to the security area of the hotel. As Delzer did this, a handgun fell from the body of Long to the floor. Delzer then placed his foot on the handgun. He picked it up and continued escorting Long to the security area of the hotel. Long was never told that he was under arrest while in the casino area.

The Court does not find that Delzer or Yannis witnessed any crime committed by Long or Hill. The Court does not find that they were told that Long or Hill had run from or fled the scene of the car accident. The Court does not find that they were told that Hill or Long were actually involved in a car accident in the garage. The Court does not find that Long or Hill engaged in any furtive movements with their hands for the few seconds before they were seized. The Court does not find that Long ignored requests to "not move" his hands or take his hands out of his pockets before he was placed in custody by Yannis. The Court finds that Long was completely compliant with Yannis' and Delzer's directions to him. Long was calm and never resisted the officers or security guards in any way. The Court does not find that Long or Hill engaged in any suspicious behavior. The Court does not find that Long or Hill engaged in any conduct that suggested that they were a threat to the safety of the officers or the safety of the public. Long and Hill were initially confronted and detained in a public area of the casino.

The Court finds that Long was physically restrained within seconds of being identified by the hotel security officer as someone who was seen near a car accident in the garage. The Court does not find that Delzer or Yannis had been told specifically of any crime that Long had committed before Long was placed into custody. Neither Yannis or Delzer had seen Long or Hill prior to the two being identified by hotel security in the public casino area. Delzer only placed Long in custody because he was directed to do so by Yannis.

/ / /

/ / /

/ / /

### III. LEGAL STANDARD

An investigatory stop does not violate the Fourth Amendment "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). "Reasonable suspicion requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." United States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000)(internal citations omitted).

"There is no bright-line rule to determine when an investigatory stop becomes an arrest" and "in determining whether stops have turned into arrests, courts consider the totality of the circumstances." Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996) (citations and internal quotations omitted). "The standard for determining whether a person is under arrest is not simply whether a person believes that he is free to leave." United States v. Bravo, 295 F.3d 1002, 1009 (9th Cir. 2002) (citation omitted). "[I]ntrusive measures may convert a stop into an arrest if the measures would cause a reasonable person to feel that he or she will not be free to leave after brief questioning—i.e., that indefinite custodial detention is inevitable." United States v. Guzman-Padilla, 573 F.3d 865, 884 (9th Cir. 2009) (citation omitted).

### IV. ANALYSIS

The Court finds that the United States has not established that the officers had a legal basis to detain Long. First, the Court finds that that officers did not have reasonable suspicion to detain Long for their initial investigatory stop of him. Second, the Court finds that the use of handcuffs on Long and his placement against the wall in conjunction with the other circumstances of the continued detention converted his detention into an arrest, and that the officers did not have probable cause to arrest Long. Finally, the officers' detention of Long led to the officers finding the handgun in this case. The handgun must therefore be suppressed.

**A. No Reasonable Suspicion**

The Court finds that the officers did not have specific articulable facts that Long had been engaged in or was currently engaged in criminal activity before he was detained by Yannis. Yannis had been told by the security guard for the Cosmopolitan that there had been a car accident in the garage before Yannis left with the guard to go to the casino area. Upon arriving in the casino area, Yannis was only told that Long had been seen near the car accident in the garage when identified by the security officer. Yannis was not told how long ago the accident had occurred. He was not told of Long's alleged connection, if any, to the accident other than having been spotted near it. He was not told Long's actual proximity in terms of time or distance to the accident. Nonetheless, Yannis then placed Long in custody within seconds by grabbing his wrist and shoulder. The Court finds that at the moment that Yannis grabbed Long with two hands, Long was detained in an investigatory stop.

Having observed the officers' testimony and viewed the video of the incidents, the Court is not persuaded that the factual assertions of the government to support reasonable suspicion were credibly established <u>before</u> the seizure of Long. The Court does not find that Yannis or Delzer were told that Long had been involved in a hit and run accident in the garage before Long was detained. They were not told that Long had been the driver of the car in the accident. They were not told that Long had fled from the accident or hotel security. They were not even told of Long's relationship to the accident. There were therefore no specific or articulable facts that Long had violated any laws, including Nevada Revised Statute 484E.050 regarding a driver fleeing the scene of an accident. The Court finds only that Long had only been identified as a person near a car accident in the garage but not as a person having fled an accident or even an actual participant in the accident.

In conclusion, Yannis did not witness Long commit any crime before detaining him. Yannis was not told that Long had committed a crime by the security guard before detaining him and then directing Delzer to handcuff him. Long did not engage in any furtive or suspicious hand movements upon first being

confronted by Yannis and hotel security guards. The officers did not have reasonable suspicion to detain Long.

### B. No Probable Cause To Arrest Long

The Court further finds that the investigatory detention was subsequently converted into an arrest before officers found the handgun in this case. The officers did not have probable cause to arrest Long.

The Court finds that, considering the totality of the circumstances, the investigatory detention was converted into an arrest after Hill was removed to the private security area but Long was handcuffed and against the wall with Delzer physically restraining him. The restraint measures employed by Delzer were not necessary for officer safety or public safety. Long had not engaged in any suspicious behavior before being handcuffed, placed against the wall and restrained. He was fully compliant with the directives of the officers. He was calm and not acting in an erratic manner. The officers had not been told that Long was armed or that he had recently engaged in a violent crime.

The officers' actions were disproportionate to the alleged basis for the stop and were more consistent with an arrest. Long was immediately placed in handcuffs. After being handcuffed, he was physically held by officers the entire time and placed against a wall. He was not permitted to turn and address the officers. He was not told why he was being detained. There were two police officers present in addition to two to three hotel security personnel. The police officers were visibly armed.

Finally, Long witnessed Yannis remove Hill from the public casino area in handcuffs. The Court finds that, while he was not told he was under arrest, he was not told that he would be released or that he was free to go. He was not told that he would be released shortly. At the point at which Hill had been removed and Long was handcuffed against the wall, his detention was converted into an arrest. A reasonable person would believe at that time the he was not free to leave. A reasonable person would believe that the officers believed that he had committed a crime and that he would not be getting released after brief questioning. Guzman-Padilla, 573 F.3d at 884.

For the same reasons that the officers lacked reasonable suspicion, the officers lacked probable cause. The officers received no new or additional information between the time when Yannis initially physically detained Long and when Delzer handcuffed Long and placed him against the wall. At the time of the detention and then arrest of Long, the officers had no specific articulable facts that Long had committed a crime. His arrest was therefore invalid.

Finally, the Court finds that Long's detention and arrest directly resulted in the officers finding the handgun at issue in this case. The handgun fell from Long's body only after he had been handcuffed and was being escorted to the detention/security area of the hotel. The Court finds that there is no credible evidence in the record to suggest that the officers would have discovered this handgun absent their unlawful detention of Long. The handgun is suppressed as fruit of an unlawful search.

### V. Conclusion

For the reasons explained in this Order, the Court finds that the officers did not have a legal basis for detaining and then arresting Long. The Court finds that the handgun at issue in this case was discovered because of this unlawful detention and must therefore be suppressed.

DATED this 20th day of September, 2017.

_____
RICHARD F. BOULWARE, II.
United States District Judge